*In re* APPEAL OF THE COLLECTOR OF CUSTOMS FROM THE DECISION OF THE BOARD OF GENERAL APPRAISERS as to the classification and the rate and amount of duty on certain merchandise imported per Steamship "Sonoma" on January 5, 1905, from Sydney, in the Island of Australia, by the HAWAII AND SOUTH SEAS CURIO COMPANY.

## August 4, 1905.

*Board of General Appraisers.—Discretion:* When a protest is made to the Board of General Appraisers against the ruling of a collector fixing a rate of duty on imported articles, such Board has discretion to decide the questions raised upon an examination of the papers and a sample of the articles under consideration alone, or upon these and the testimony of witnesses as it may consider necessary.

*Same.—Appellate Court:* A conclusion of fact of a Board of General Appraisers based upon its examination of such papers and articles is not binding upon an appellate court, though it is entitled to respectful consideration.

*Necklace—Jewelry:* A Necklace is not necessarily jewelry.

*Evidence—Usage—"Commonly Known":* Evidence of description of articles in one or two Custom House entries not proof of general usage of names by which such articles are commonly known.

*Common Usage—Judicial Notice:* Courts may take judicial notice of common usage.

*Evidence—Letter of Instructions to Official:* A letter of instructions from the Treasury Department to a collector in relation to the classification under the Tariff Act of a certain description of articles, has no bearing in the trial of an issue arising from the collector's classification.

Appeal Under Section 15, Customs Administrative Act of June 10, 1890, (26 Stat. L., 131).

J. J. Dunne, Ass't. U. S. District Attorney, for Appellant.

Thayer & Hemenway, Attorneys for Appellees.

W. S. Fleming and Lorrin Andrews, Attorneys on Brief for Appellees.

DOLE J.   This case comes before me on an application by E. R. Stackable, Collector of Customs for the Collection Dis-

trict of Hawaii, for a review of the decision of the Board of General Appraisers at the port of New York, reviewing and reversing the decision of the petitioner as to the classification and rate of duty chargeable on certain strung shells imported into Honolulu, Territory of Hawaii, in the steamship "Sonoma" from Sydney, Australia, January 5th, 1904, by the Hawaii and South Seas Curio Company doing business in said Honolulu. Upon the filing of such petition, an order was made requiring the said Board of General Appraisers to return to this court the record and evidence taken by them in the case together with a certified statement of the facts involved and their decision thereon.

The said strung shells were classified by the petitioner as under paragraph 434 of the Tariff Act of July 24, 1897 (30 Stat. L., 151, 192), which paragraph is as follows:

"Articles commonly known as jewelry, and parts thereof, finished or unfinished, not specially provided for in this Act, including precious stones set, pearls set or strung, and cameos in frames, sixty *per centum ad valorem.*"

The importer in his protest against such ruling of the collector claims that the shells were not jewelry within the meaning of paragraph 434 but should be classified free of duty under paragraph 635, in the free list, or should be classified under paragraph 450, under which they would be liable to duty at the rate of thirty-five *per centum ad valorem* as manufactures of shells.

Paragraph 635 is as follows:

"Pearl, mother of, and shells, not sawed, cut, polished or otherwise manufactured, or advanced in value from the natural state."

Paragraph 450, leaving out the items not relative to this issue, is as follows:

"Manufactures of * * * shells engraved, cut ornamented, or otherwise manufactured, thirty-five *per centum ad valorem.*"

The main question in this case is whether or not the imported articles in question are "commonly known as jewelry." The return of the Board of General Appraisers contains no testimony of witnesses. The decision of such Board contains the following: "The merchandise in question consists of cut or "pierced Tasmanian shells—sometimes called kelp shells—per- "manently strung on a cotton thread six feet in length knotted "at the ends, thus forming a circlet, but not fitted with clasp, "snap or other metal device incident and usual to necklaces. "These shells are the product of a mollusc of the whelk family, "half an inch, or less, in length. Viewed by transmitted light "they are reddish pink in hue and present a lustrous appear- "ance, iridescent in character, in which the colors purple, green "and yellow predominate. The shells are so fragile that, when "pressed between the fingers they readily collapse, breaking in- "to minute fragments.  *   *   *   The shells in question, hav- "ing been pierced or cut, would seem to be included within the "term of paragraph 450. We find that they are not commonly "known as jewelry and sustain the claim in the protests that "they are dutiable at 35 *per cent ad valorem.*"

In appraisement under a protest, the duty of the General Appraisers is "to examine and decide" the cases submitted to them by the protest. Upon an appeal to a circuit court they are required to return to such court "the record and the evidence taken by them together with a certified statement of the facts involved in the case and their decision thereon." Under the law, the General Appraisers appear to have the discretion to decide such questions upon a mere examination of the papers and the articles under consideration or upon these and additional testimony of witnesses, as they may consider necessary. It is supposable that these men are experts in judging of the value and nature of articles referred to in the Tariff Act. They necessarily become so after considerable experience in their work. In this case it may be that from their expert knowledge of such matters they were able to come to a conclusion satis-

factory to themselves without additional testimony, and they had the right to do so.

Much attention is given in the briefs as to the binding effect of such a decision as to facts, upon this court, and the reasons thereof are fully discussed. They relate mainly to the well known and reasonable rule that the conclusions of fact reached by a court upon the testimony of witnesses appearing before it, with the advantage of weighing the testimony of such witnesses from its opportunity of observing their manner, expression and method of giving such testimony, are not disturbed by an appellate court unless unsupported by the evidence or contrary to the weight of evidence. This rule does not apply to this question of fact in which no testimony of witnesses was given and I do not consider that this court is bound by the conclusion of the Board of Appraisers, although it is entitled to respectful consideration, for "the interpretation of words of common speech "is within the judicial knowledge and matter of law." *Sonn. v. Magone,* 159 U. S. 417, and cases cited.

The counsel for the petitioner refers considerably to the word necklace and to the incontestable conclusion that these strung shells are necklaces. From this he appears to draw a very strong implication that being necklaces they must be jewelry. I admit that shells so prepared and used for wearing around the neck, as these undoubtedly are, are necklaces, but necklaces also include strings of coins, beads or flowers, according to the Century Dictionary, which describes a necklace as a flexible ornament worn around the neck, which description would also include the strings of seeds of various kinds so extensively prepared in these Islands and often worn about the neck. I do not consider that a necklace of flowers or a necklace of seeds unmounted in metal but merely strung could be reasonably classified as jewelry. The issue of fact here, however, is whether the strings of shells in question are commonly known as jewelry. This is a question which the Board of General Appraisers has decided in the negative. There is no information

before me on this point.  The counsel for the petitioner refers
to a subsequent description of an importer of similar shells as
entering them as jewelry.  Counsel on the other side explain
this as having been necessary in order to procure such goods
from the custom house, the collector having previously classified
them as jewelry.  Whether this is so or not, I should not con-
sider that one or two entries of such character were any proof
that such articles were commonly known as jewelry.  If there
were such a general recognition of such articles as jewelry in
the public mind or among those dealing with them and using
them as should definitely inform the court, I should accept such
common usage as something that the court might take judicial
notice of, but there is no such general understanding in this
community that I am aware of.

The letter from the Treasury Department has been referred
to as having a bearing upon the consideration of this case.
This is a letter from the Assistant Secretary of the Treasury
Department to the Collector of Customs of Honolulu and al-
though it instructs him to classify such articles as dutiable un-
der paragraph 434, it has no authoritative relation to this court.

It has been a serious question with me whether the strung
shells in question should not be classified under paragraph 635
and allowed to be entered free of duty, as it requires a some-
what liberal interpretation of the word *manufacture* to include
them as "shells engraved, cut, ornamented or otherwise manu-
factured," according to paragraph 450, these shells being merely
mechanically pierced with a small hole and then strung on a
cotton cord of no value otherwise than its use as mechanically
holding the shells in a string, and having no metal clasp or
fastening of any kind.  The description of paragraph 635,
"shells not sawed, cut, polished or otherwise manufactured"
would include these shells were it not for the additional sen-
tence "or advanced in value from the natural state."  Un-
doubtedly the boring of the holes which has to be carefully and
skillfully done, because of the fragile nature of the shells, and
the stringing of them, does advance their value from what it

would be in the natural state and therefore takes it out of the description of that paragraph.

In support of the conclusion arrived at, I would make the following citations from abstracts of Treasury decisions:

*T. D. 24973.* "No. 224.—Shells strung.—Protest 61543b of Louis Rosenthal against the assessment of duty by the collector of customs at the port of New York. Before Board 2 (Fischer, Howell and De Vries, General Appraisers) January 30, 1904. Opinion by De Vries, G. A.

"Certain shells strung on a cotton thread were classified under paragraph 408, tariff act of 1897, as beaded articles, and are claimed to be dutiable as manufactures of shell under paragraph 450. Protest sustained."

Also, *T. D. 25677.* "No. 3150.—Jewelry.—Shell Necklaces. Protest 117657 of C. C. Lord against the assessment of duty by the collector of customs at the port of San Francisco. Before Board 1 (Lunt, Sharrats, and McClelland, General Appraisers), September 30, 1904. Opinion by Sharratts, G. A.

"The Board sustained the importer's contention that certain shell necklaces, classified as jewelry under paragraph 434, tariff act of 1897, should have been classified as manufactures of shell under paragraph 450."

Counsel on both sides have furnished elaborate and learned briefs, going much into the history of jewelry, its uses, material and manufacture, with references to cases bearing upon its classification, which contain much of value in the way of information and suggestion to the court.

With the absence of evidence as to the strung shells in question being commonly known as jewelry, the supposable expert conclusion of the Board of General Appraisers and the precedents of the Treasury decisions cited, I feel unable to support the contention of the collector in his classification of such articles as jewelry, and affirm the decision of the Board of General Appraisers.